UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SAKIB BRKIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:22-cv-00101-HAB |
| | ) |
| COSTCO WHOLESALE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Defendant, Costco Wholesale Corporation ("Costco"), employed Plaintiff, Sakib Brkic ("Brkic"), as a meat wrapper at Costco's warehouse located in Fort Wayne, Indiana. Costco's General Manager terminated Brkic on July, 3 2021, after hearing that Brkic relabeled and repackaged meat to extend its shelf life beyond the expiration date. Costco claims that this violation of company policy was the sole reason for Brkic's termination.

Brkic tells a different tale. On June 18, 2021, Brkic alleges that he fell on the job and was injured as a result. He believes that Costco retaliated against him because he needed workers' compensation benefits for his work-related injury. *See* Ind. Code § 22-3-2 et seq. Yet Brkic did not file a workers compensation claim until nearly two months after his termination. Still, he believes that Costco's mere knowledge of his injury triggers the anti-retaliation provisions of *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973). Presently before the Court is Costco's Motion for Summary Judgment. (ECF No. 24). The motion has been fully briefed (ECF Nos. 24, 25, 31, 35) and is ripe for ruling. For the reasons below, Costco's Motion for Summary Judgment will be GRANTED.

**I.    Factual Background**

Costco operates cash and carry membership warehouses which sell products to businesses and members. (ECF No. 32, ¶ 1). Costco employed Brkic as a meat wrapper at its Fort Wayne location from August 26, 2020, until July 3, 2021. (*Id.* at ¶ 3). Costco's Employee Agreement ("Agreement") contains comprehensive safety policies, including "General Safety Rules" that require an employee to "[r]eport immediately any unsafe condition, work practice, accident, or injury to a supervisor or Manager." (*Id.* at ¶ 8). The Agreement also contains a list of actions that can result in immediate termination including disobedience of company rules, serious misconduct, dishonesty, interfering with an investigation, and insubordination. (*Id.* at ¶ 10). Brkic received and signed a copy of the Agreement in August 2020 which acknowledged that he understood his responsibility to comply with the Agreement as well as other Costco policies.[1] (*Id.* at ¶ 11).

Costco also maintains company rules that apply specifically to the meat department called the "12 Commandments of Quality Assurance for Costco Meats." (*Id.* at ¶ 13). These Commandments require that an employee "[n]ever sell out-of-date product. Re-labeling to extend shelf life is not allowed and will *not* be tolerated." (*Id.* at ¶ 14). Brkic received and signed a copy of the Commandments in October 2020. (*Id.* at ¶ 15). And there is no dispute that if an employee were to repackage expired meat, then Costco could terminate their employment. (*Id.* at ¶ 21).

Brkic alleges that he fell while working his shift on June 18, 2021. (*Id.* at ¶ 33). His supervisor and three coworkers witnessed the fall. (*Id.* at ¶ 34). Brkic's supervisor, after the fall, told Brkic that it was time to go home and take some Tylenol. (*Id.* at ¶ 35). But he also said that if Brkic was "not okay, the [Brkic could] go to [the hospital]." (*Id.*). Additionally, Brkic told one of his co-workers that he was "hurt." (*Id.*).

---

[1] Brkic's Response discusses that he is of "Bosnian and Serbian ethnicity and heritage" such that there was a language barrier that would prevent Brkic from understanding the terms of the Agreement. (ECF No. 32, ¶ 11).

When Brkic returned to work for his next shift, his supervisor told him "try to take medicine, Tylenol, you'll be fine. If you no [sic] be fine, you go for doctor." (*Id.* at ¶ 39). In response, Plaintiff told his supervisor that "it hurts more and more." (*Id.*). Other than the supervisor and three coworkers, Brkic did not talk to anybody else as Costco about the fall and "nobody asked [him] anything." (*Id.* at ¶ 36).

On June 23, 2021, the meat department supervisor and three meat department employees approached Costco General Manager Kevin Powers ("GM Powers") to report that Meat Department Manager Jack Palmer ("Palmer") was relabeling and repackaging expired meat to extend its shelf life beyond the expiration date. (*Id.* at ¶ 22). During the same conversation, the employees reported to GM Powers that Brkic was engaging in the same conduct. (*Id.*).

GM Powers began by investigating the report that Palmer had improperly relabeled and repackaged meat. (*Id.* at ¶ 23). From June 23 to June 25, 2021, GM Powers and other Costco managers interviewed the four meat department witnesses and Brkic as part of the investigation. (*Id.*). Still, Brkic testified that he was first called into the office and questioned about Palmer's misconduct "before [his] fall." (*Id.* at ¶ 24). At the end of Palmer's investigation, GM Powers determined that Palmer engaged in falsifying company documents, dishonesty, and serious misconduct. (*Id.* at ¶ 25). GM Powers terminated Palmer effective July 1, 2021. (*Id.*).

GM Powers began investigating the allegations that Brkic was repackaging and relabeling expired meat for sale on June 29, 2021. (*Id.* at ¶ 26). As part of Brkic's investigation, GM Powers and other Costco employees interviewed the same meat department witnesses. (*Id.* at ¶ 27). All four witnesses reported that they had witnesses Brkic relabel and repackage meat to extend the life of the meat beyond the expiration date and place the expired meat on Costco's shelves for sale. (*Id.* at ¶ 28). During Brkic's interview on June 29, Brkic first told GM Powers that he had extended

3

the shelf life of the products, but changed his answer to say that he had not. (*Id.* at ¶ 30). And GM Powers also asked Brkic if he ever had any issues with other employees in the meat department to which Brkic responded no.[2] (*Id.* at ¶ 31).

At the end of Brkic's investigation, GM Powers concluded that Brkic engaged in disobedience of company rules, serious misconduct, and dishonesty. (*Id.* at ¶ 32). For these reasons, GM Powers decided to terminate Brkic on June 29, 2021. (*Id.*). On July 3, 2021, GM Powers met with Brkic to advise him of his termination. (*Id.* at ¶ 40). At the meeting, GM Powers provided Brkic with a Notice of Termination that informed him that he was being terminated for his violation of company policy. (*Id.* at ¶ 41).

It was only after his termination that Brkic "asked for the paper for the doctor." (*Id.* at ¶ 44). When asked if he ever filed a workers' compensation claim relating to his fall at Costco, Brkic responded that "[he] only asked for unemployment, whatever they referred me to from labor work, that's what I did." (*Id.* at ¶ 45). When asked further if Brkic ever filed a workers' compensation claim against Costco, he responded "no."[3] (*Id.*). Yet Brkic, or somebody on his behalf, filed a workers' compensation claim on August 25, 2021—about two months after his termination. (*Id.* at ¶ 46).

## II.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n order to withstand summary judgment, the nonmovant must allege *specific* facts

---

[2] Brkic contends that he misunderstood the question in light of his language barrier. (ECF No. 32, at ¶ 30).
[3] Brkic again contends that this was a mere misunderstanding because he cannot comprehend the English language. (ECF No. 32, at ¶ 45).

4

creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M. v. Park Forest-Chicago Heights., Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003). Still, a court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650 (2014).

The Court's role is not to weigh the evidence or evaluate the credibility of the witnesses. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the "non-movant does not satisfy its burden merely by pointing to self-serving allegations that otherwise are without evidentiary support." *Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994). Put differently, "summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005), *cert. denied*, 546 U.S. 1033 (2005) (quotations omitted).

### III. Discussion

Brkic's Complaint posits that he was fired in retaliation of his workplace injury for which he expressed his need for medical care and workers' compensation benefits—a statutory benefit under Indiana's Workers' Compensation Act. (ECF No. 3, ¶ 13). Costco argues that Brkic cannot establish a prima facie case of retaliation because (1) Brkic did not engage in a statutorily protected activity before his termination and (2) there is no causal link between Brkic's termination and his workers' compensation claim. (ECF No. 25 at 4). And even if Brkic could establish a prima facie case, Costco contends that they had a legitimate, nondiscriminatory reason for Brkic's termination—namely that he was violating company policy by relabeling and repackaging expired meat. (*Id.*).

5

Because this case reaches the Court through diversity jurisdiction, Indiana law applies. And Indiana courts have "outlined and consistently followed a three-step approach to a retaliatory discharge *Frampton* claim under Indiana law." *Best Formed Plastics, LLC v. Shoun*, 51 N.E.3d 345, 351 (Ind. Ct. App. 2016). To prevail on his workers' compensation retaliation claim, Brkic must prove a prima facie case of retaliation by showing that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Settele v. Walgreens Co.*, 2007 WL 1970954, at *3–5 (N.D. Ind. July 3, 2007); *Purdy v. Wright Tree Serv.,* Inc., 835 N.E.2d 209, 213 (Ind. Ct. App. 2005).

But the inquiry does not end there. "If a plaintiff establishes these elements, defendant has the burden to produce a legitimate, nondiscriminatory reason for its actions." *Id.* Once this reason is produced, a plaintiff must prove that the employer's proffered reason is pretextual. *Id.* "At this point, the presumption of retaliation that plaintiff enjoyed from establishing her prima facie case drops away, and plaintiff must meet her ultimate burden of showing that there is evidence from which a reasonable jury could find that defendant discharged plaintiff solely for exercising a statutorily conferred right." *Settele,* 2007 WL 1970954, at *4 (citing *Nawrot v. CPC Intl.,* 277 F.3d 896, 905-06 (7th Cir. 2002)).

Costco first attacks Brkic's prima facie showing by arguing that he did not engage in a statutorily protected activity during his employment. (ECF No. 25 at 4-6). Retaliation claims based on filing a workers' compensation claim were recognized as actionable by the Indiana Supreme Court in *Frampton,* 297 N.E.2d 425. In *Frampton*, the Court held that a plaintiff who demonstrates that he or she was discharged by an employer for filing a claim under Indiana's Workmen's Compensation Act "has stated a claim upon which relief can be granted." *Id.* at 428.

6

"[U]nder ordinary circumstances, an employee at will may be discharged without cause," but "when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Id.* at 428. And Brkic maintains that reporting his work-related injury and requesting medical care are sufficient to trigger the anti-retaliation provision under *Frampton.*

*Frampton* was decided under Indiana Trial Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* And the Indiana Supreme Court did not specifically define when a plaintiff "exercise[es] a statutorily conferred right." We know that "filing a claim under Indiana's Workmen's Compensation Act" is sufficient. *See id.* But Brkic did not file his workers' compensation claim until well after his termination. Even still, filing a claim is not the only way to engage in a statutorily protected activity in this context.

"[E]ven though the *Frampton* Court spoke in terms of retaliation for the filing of a workers' compensation claim, its rationale is broad enough to cover plaintiffs ... who have at least informed their employer of an intent to file a claim prior to being discharged." *Hudson v. Wal-Mart Stores, Inc.,* 412 F.3d 781, 785-86 (7th Cir. 2005). Said differently, under *Frampton,* a plaintiff can prove that he engaged in a statutorily protected activity by presenting evidence that he informed an employer of his intent to file a workers' compensation claim before his discharge. "Otherwise, an employer could avoid the dictates of *Frampton* and the Indiana Workman's Compensation Statute by preemptively terminating employees as soon as it caught wind that an injured employee was considering a claim." *Id.*

The issue thus becomes whether Brkic expressed his intent to file a workers' compensation claim to Costco before his discharge. And Brkic believes that his supervisor merely knowing about his alleged injury is enough to sustain a cause of action under *Frampton*. But "Indiana courts have

7

narrowly construed the public policy exception recognized in *Frampton*." *Harper v. C.R. England, Inc.*, 2011 WL 3421490, at *13 (N.D. Ind. Aug. 3, 2011), *aff'd*, 687 F.3d 297 (7th Cir. 2012) (quoting *Smith v. Elec. Sys. Div. of Bristol Corp.*, 557 N.E.2d 711, 712 (Ind. Ct. App. 1990)). Contrary to Brkic's belief, no court has stretched the dictates of *Frampton* to the lengths he requests. This Court will not do so now.

The facts—even when painted in a light most favorably to Brkic—do not demonstrate that Brkic provided Costco with notice of his intent to file a workers' compensation claim before his termination. Brkic fell on June 18, 2021, in front of his supervisor and three coworkers. (ECF No. 32, ¶¶ 33-34). After Birkic explained that he was "hurt," Brkic's supervisor sent him home and told him that if his conditioned worsened, then he should go to the doctor. (*Id.* at ¶ 35). And, according to his declaration, Brkic informed his supervisors that he needed to see a doctor.[4] (ECF No. 32-1, ¶ 40). Brkic contends that this is sufficient conduct to notify Costco of his intent to file a workers' compensation claim.

Yet a review of the relevant authority reveals that Brkic's alleged notice is insufficient to sustain a *Frampton* retaliation claim. Other courts, applying *Frampton*, have made clear that an employee does not engage in a protected activity even where an employee reports to his branch manager that "he had slipped and mess up his knee" and needed somebody to replace him during his shift. *Byerly v. Prairie Farms Dairy, Inc.*, 2017 WL 3117013, at *1 (S.D. Ind. July 21, 2017) (workers' compensation retaliation claim denied because a plaintiff did not show that he expressed to his employer an intention to file a workers' compensation); *See also Harper*, 2011 WL 3421490,

---

[4] Brkic's subsequent declaration submitted in opposition to Costco's motion for summary judgment references "supervisors" who allegedly did not send him to the doctor. (ECF No. 32-1, ¶40.). But Brkic does not identify these supervisors and did not identify them during his deposition.

8

at *13-14 (workers' compensation retaliation claim denied where a plaintiff argued that "the mere filling out of a first report of injury was one of the reasons behind his termination").

Brkic did not actually file a workers' compensation claim until nearly two months after his termination. Moreover, Brkic's own deposition testimony is that he did not believe that he ever filed a workers' compensation claim and that he only filed for unemployment benefits. (ECF No. 32, ¶ 45). Brkic now attributes these statements to a language barrier at his deposition. (*Id.*). But, during his deposition, Brkic made clear that he understood the English language and regularly communicated in English at work. (ECF No. 35-1). And he used a certified Bosnian and Serbian interpreter at his deposition—which are both languages in which Brkic is fluent. (*Id.*). Although Brkic now claims that his testimony was a mistake, it does not negate that Brkic insisted that he never filed a workers' compensation claim against Costco—even with the benefit of interpreters. If Brkic himself did not know that he filed a workers' compensation claim, then this Court questions whether he could have the mindset to notify his Costco of his intent to file a workers' compensation claim.

Brkic merely telling his supervisor that he was hurt cannot by itself put Costco on notice of his intent to file a workers' compensation claim. Even putting Brkic's alleged misstatements at his deposition aside, he never engaged in a statutorily protected activity which would give rise to a *Frampton* retaliation claim. In this Court's eyes, Brkic's view extends past the outer bounds of the "narrowly construed… public policy exception" in *Frampton. See Harper,* 2011 WL 3421490, at *13. Many employees get hurt on the job and never intend to file a workers' compensation claim. And there are virtually infinite reasons for doing so. This Court hesitates to require an employer to investigate every bump and bruise. Some onus must be placed on the employee to

9

actually exercise their rights. Under these facts, Brkic failed to notify Costco of his intent to file a workers' compensation claim.

Even if Brkic did engage in a protected activity (the Court finds that he did not), the Court is not convinced that he can establish causation here. "To survive a motion for summary judgment in a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself." *Purdy*, 835 N.E.2d at 212. "The employee must present evidence that directly or indirectly supplies the necessary inference of causation between the filing of a worker's compensation claim and the termination." *Id.*

Causation is not inferred merely from evidence that the employee filed for benefits and was fired. *Smeigh v. Johns Manville, Inc.,* 643 F.3d 554, 561–63 (7th Cir. 2011); *see also Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417, 1420 (7th Cir. 1990). The temporal proximity between the filing of a claim and an employee's discharge alone is insufficient to raise a genuine issue of material fact. *Smeigh*, 643 F.3d at 561–63; *see also Walton v. U.S. Steel Corp.*, 2012 WL 6681725, at *8 (N.D. Ind. Dec. 21, 2012) (timing "is not enough to establish a causal connection and survive summary judgment").

Indeed, the notion that timing evidence, by itself, is rarely sufficient to create a jury question rings "especially true… where there was an intervening event leading to [a plaintiff's] termination and no evidence of pretext." *Smeigh*, 643 F.3d at 561–63 (citing *Caskey v. Colgate–Palmolive Co.*, 535 F.3d 585, 594 (7th Cir. 2008) (finding the plaintiff unable to make a causal connection even though she was disciplined and terminated shortly after her injury where there were several intervening events, including a series of unexcused absences, leading to her termination)).

While Brkic concedes that "timing evidence alone is not sufficient to create causation," he maintains that there "is other evidence of causation." (ECF No 31 at 4). He points to his statements to his supervisor that he was hurt and would go see a doctor. (ECF No. 32-1, ¶¶ 28, 33, 41). Although he seeks to disguise these statements as "other evidence[,]" this too is mere evidence of timing. Because Brkic did not file his workers' compensation claim until nearly two months after his discharge, the statements—although insufficient—would be considered his statutorily protected activity. And he does not mention more than the timing of the statements and his discharge.

Perhaps more fatal to Brkic's showing of causation is the intervening report of his misconduct on June 23, 2021. (ECF No. 32, ¶ 22). During GM Palmers' investigation into Brkic's alleged misconduct, four witnesses reported that Brkic had repackaged expired meats and placed them on Costco shelves for sale.[5] *Id.* at ¶ 28). As a result of these intervening reports, GM Powers terminated Brkic for violating company policy. *See Smeigh.*, 643 F.3d at 561–63 (failure to follow company policy was an intervening event that defeated causation between the filing for a workers' compensation claim and termination); *See also Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002) ("It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees").

The final nail in Brkic's causation coffin is that GM Powers was unaware of his injury or intent to file a workers' compensation claim. A plaintiff cannot succeed on a claim for retaliatory discharge where the employer's personnel responsible for the discharge was unaware of the alleged protected activity. *Walton v. U.S. Steel Corp.*, 2012 WL 6681725 (N.D. Ind. Dec. 21, 2012).

---

[5] Brkic also admits that the initial investigation of his manager, Palmer, began in early June 2021, before he fell and injured his knee. (ECF No. 32, ¶ 24) Based on Brkic's claim, the initial investigation of his manager predated and was unrelated to any alleged protected activity.

11

"Absent such knowledge there can be no causal link" *Id. See also Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004).

Brkic has presented no evidence that GM Powers, the person responsible for his termination, had actual knowledge of Brkic's injury—let alone an intent to file a workers' compensation claim. He attempts to distract from this undisputed fact by claiming that he "limped" during his termination meeting and stating that "GM Powers should have been aware of his workers' compensation injury." (ECF No. 32, ¶ 38). But the assertion that GM Powers "should have" known of Brkic's injury is nothing more than speculation. Further, what GM Powers "should have" known is immaterial. *See Luckie,* 389 F.3d at 715 ("[i]t is not sufficient that an employer could or even should have known about an employee's complaint; the employer must have had actual knowledge of the complaints for its decisions to be retaliatory"). It does nothing to negate the undisputed record that GM Powers never learned of Brkic's fall before his discharge. Simply put, GM Powers did not have actual knowledge of Brkic's injury or his alleged intent to file a workers' compensation claim. Brkic has presented no evidence otherwise.[6]

Brkic's claim should also fail because there is no causal link between his alleged protected activity and his termination. But even if he had succeeded in this prima facie showing, Costco has produced a legitimate reason for Brkic's termination. GM Powers terminated Brkic for violating company policy after an extensive investigation into the alleged misconduct.[7] And Brkic gives

---

[6] As further support, Costco highlights that Brkic was treated the same as other similarly situated employees. First, Brkic's manager—who was not injured and did not file a workers' compensation claims—was fired for the same alleged misconduct as Brkic. (ECF No. 32, ¶¶ 22-23, 25). Both Brkic and his manager were fired for these violations. Second, three other employees—like Brkic—were injured at Costco's Fort Wayne warehouse and filed workers' compensation claims. (*Id.* at ¶ 48). Unlike Brkic, these employees were not terminated because they did not violate company rules. (*Id.*). And Brkic admits that no Costco employee, supervisor, or manager ever exhibited a negative attitude towards him. (*Id.* at ¶¶ 35-36, 47). Thus, there is no evidence of animus which would support a retaliation claim here.

[7] While Brkic attempts to "dispute" that anyone reported his misconduct, or that he engaged in misconduct, in response the undisputed record (ECF No. 32, ¶¶ 22-23), he has provided no evidence to refute these facts. Reliance on mere

credence to these policies as he admits that it violates company policy to repackage expired meat to extend its shelf life. (ECF No. 32, ¶ 18-21). More importantly. he acknowledges that if an employee does so, Costco can terminate their employment. (*Id*.)

Indeed, Brkic's ultimate burden is to "demonstrate that [his] discharge was solely in retaliation for the exercise of a statutory right." *Purdy*, 835 N.E.2d at 212. His claim must fail because there is no evidence that Costco's reason for his termination was false. *See Gibson v. Interstate Blood Bank ADP-UCS Bio-Blood Component, Inc.,* 2014 WL 3082708, at *11 (N.D. Ind. July 7, 2014) (summary judgment granted on workers' compensation retaliation claim based on well-documented, long-standing performance deficiencies, which culminated in the issuance of a corrective action plan before she reported a workplace injury); *see also Hudson*, 412 F.3d at 787 (affirming summary judgment for employer on workers' compensation retaliation claim where employee was fired a few days after asking about his workers' compensation rights because the employer's stated reason for the termination were strong and credible).

Even still, Brkic presses the Court to second-guess Costco's investigation and business decision because he denies he engaged in such terminable misconduct. Such an invitation is futile and fails to establish pretext. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) ("The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge."). "Pretext is not necessarily established merely when the plaintiff demonstrates the employer's reason was mistaken. An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held." *Cooper v. Brunswick Leisure Boat Co., LLC*,

---

speculation is not enough to defeat summary judgment. *Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir. 1999). Furthermore, improper denials, additional "facts," and arguments in his Rule 56.1 response should be disregarded, and Costco's facts deemed admitted. *Ammons v. Aramark Univ. Servs.*, 368 F.3d 809, 817 (7th Cir. 2004).

2021 WL 2589045, at *5 (N.D. Ind. June 24, 2021). Indeed, it is not the Court's responsibility to sit as some "superpersonnel department that reexamines an entity's business decisions and reviews the propriety of the decision." *See Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).

Brkic can show pretext by showing that the Costco's "proffered reason is factually baseless, is not the actual motivation for the discharge, or is insufficient to motivate the discharge." *Purdy*, 835 N.E.2d at 212. To that end, Brkic has produced no evidence that calls into question Costco's legitimate investigation into his misconduct.[8] And he admits that Costco's proffered reason would justify discharging a Costco employee. Even if Costco were mistaken, Brkic has provided no reason to doubt that GM Powers honestly believed that Brkic was violating company policy by repackaging expired meats.

In sum, the Court finds that— under these facts—Brkic never engaged in a statutorily protected activity which would trigger a *Frampton* retaliation claim. Nor can Brkic establish a causal connection between his discharge and any alleged protected activity. Even if Brkic could leap past those hurdles, the Court sees no avenue by which he could prove that Costco's legitimate reasons for his discharge were pretextual. Thus, no reasonable jury could find in Brkic's favor based on the evidence presented and summary judgment should be granted in Costco's favor.

**IV.    Conclusion**

---

[8] Brkic, in an effort to discredit the investigation, stated that "Costco has video cameras everywhere, and at no time during these proceedings was Plaintiff ever shown any footage of him relabeling meat to extend the shelf life of the meat." (ECF No. 32, ¶ 23). Brkic speculates that there should be some video footage of his misconduct. But reliance on mere speculation is insufficient to defeat summary judgment. *Stagman,* 176 F.3d at 1001.

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 24) is GRANTED. The CLERK is DIRECTED to enter judgment for Defendant and against Plaintiff on all claims asserted in Plaintiff's Complaint (ECF No. 3).

SO ORDERED on February 1, 2024.

                                                s/ *Holly A. Brady*
                                                CHIEF JUDGE HOLLY A. BRADY
                                                UNITED STATES DISTRICT COURT